UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES F. OLESKE,

      Plaintiff,

      v.                                        18-CV-74 (JLS)

NANCY BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

---

## DECISION AND ORDER

Plaintiff James F. Oleske brought this action under the Social Security Act, seeking review of the determination by the Commissioner of Social Security that he was not disabled. Dkt. 1. Oleske moved for judgment on the pleadings. Dkt. 9. The Commissioner then responded and cross-moved for judgment on the pleadings. Dkt. 14. Oleske replied. Dkt. 17.

For the reasons stated below, this Court grants Oleske's motion and denies the Commissioner's cross motion.

## PROCEDURAL HISTORY

On June 20, 2014, Oleske applied for Disability Insurance Benefits ("DIB"). Dkt. 1, ¶ 7. He claimed that he had been disabled since August 23, 2013, due to chronic pancreatitis, type 2 diabetes mellitus, depressive disorder, anxiety disorder, bipolar disorder, and memory loss due to anoxic brain damage. *Id*. ¶¶ 5-6.

On August 15, 2014, Oleske received notice that his application was denied because he was not disabled under the Social Security Act. *Id.* ¶ 8. He requested a hearing before an administrative law judge ("ALJ"), *id.* ¶ 9, which occurred on November 10, 2016, *id.* ¶ 10. The ALJ then issued a decision on December 27, 2016, confirming the finding that Oleske was not disabled. *Id.* ¶ 11. Oleske appealed the ALJ's decision, and the Appeals Council affirmed the ALJ's decision on November 14, 2017. *Id.* ¶ 13. He then commenced this action.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the

2

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986. !!

## II. <u>Disability Determination</u>

ALJs follow a five-step process to evaluate disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. If not, the ALJ proceeds to step two. *Id*. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id*. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id*. If there are any severe impairments, the ALJ proceeds to step three. *Id*. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id*. § 404.1520(a)(4)(iii). If the claimant's severe impairment or

3

combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* §§ 404.1520(A)(4)(iii), (d).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1520(e), 404.1545.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), (e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

**DISCUSSION**

I.  **ALJ DECISION**

The ALJ analyzed Oleske's claim for benefits under the process above. At step one, the ALJ found that Oleske had not engaged in substantial gainful activity since the alleged onset date. Tr. 26.[1] At step two, the ALJ found that Oleske had the following severe impairments: chronic pancreatitis, type 2 diabetes mellitus, depressive disorder, and anxiety disorder. Tr. 26-27. At step three, the ALJ found these impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. Tr. 27-30. Next, the ALJ determined that Oleske retains the RFC to perform sedentary work. Tr. 30. The RFC provided the following for Oleske's mental health impairments:

> In addition, the claimant is able to understand, remember, and carry out simple instructions and tasks. The claimant is able to occasionally understand, remember, and carry out complex instructions and tasks. The claimant is unable to engage in supervisory duties or work that requires independent decision-making, but he is able to engage in work with minimal changes in work routine and processes. The claimant is able to frequently interact with supervisors and occasionally interact with co-workers and the general public.

Tr. 30. At step four, the ALJ found that Oleske cannot perform his past relevant work. Tr. 35. At step five, relying on the testimony of a vocational expert ("VE")

---

[1] Docket Item 6 is the transcript of proceedings before the Social Security Administration. All further references are denoted "Tr. at _."

5

and considering Oleske's age, education, work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Oleske could perform, including document preparer, addresser, and surveillance system monitor. Tr. 35-36. Accordingly, the ALJ found that Oleske was not disabled, as defined in the Act, from the alleged onset date through the date of the decision. Tr. 36.

II. **WHETHER THE ALJ PROPERLY WEIGHED THE OPINION EVIDENCE**

Oleske asks the Court to reverse or, alternatively, remand this matter, arguing that the ALJ erred and the denial of disability benefits is not supported by substantial evidence. He argues that the ALJ failed to assess properly the opinion evidence regarding his mental health, which resulted in an RFC not supported by the evidence of record.[2] Specifically, Oleske argues that the ALJ erred by giving "reduced weight" to the opinion evidence of NP Brooks-Devlin and Ms. Farris, considered non-acceptable medical sources, and giving "significant weight" to consultative opinions of Dr. Duffy and Dr. Straussner. The Commissioner argues that her decision is supported by substantial evidence and that the ALJ gave good reasons for the weights assigned to each opinion.

---

[2] Oleske makes no arguments that the ALJ erred in determining his physical limitations and impairments. Thus, this Court focuses its analysis of the ALJ's decision on the mental health medical evidence and determinations.

6

An ALJ is required to consider every medical opinion received by the Social Security Administration and to review all evidence. 20 C.F.R. § 404.1527(b)-(c); *see Whipple v. Astrue,* 479 Fed. App'x 367, 370 (2d Cir. 2012). Under the applicable regulations, a physician's assistant or counselor is not considered an "acceptable medical source," and, thus, cannot qualify as a "treating source" whose opinion may be entitled to controlling weight.[3] 20 C.F.R. §§ 404.1502(a), 404.1513(a), 404.1527(a). For any medical opinion not afforded controlling weight as a "treating source," the ALJ must weigh the opinion using the following factors: length, nature, and extent of treatment relationship; nature and extent of examining relationship; the relevant evidence in support of the opinion; the opinion's consistency with the record as a whole; whether the opinion is from a specialist; and other relevant factors. *See* 20 C.F.R. § 404.1527(c); *Smith v. Comm'r of Social Security*, 351 F. Supp. 3d 270, 279 (W.D.N.Y. 2018). Depending on the particular facts of a case, applying these factors may result in giving greater weight to an opinion from a non-

---

[3] For claims filed before March 27, 2017, the so-called "treating physician rule" applies: a treating source opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527 (c)(2); *see Colon Medina v. Comm'r of Social Security*, 351 F. Supp. 3dd 295, 301 (W.D.N.Y. 2018). A treating source is defined as the claimant's acceptable medical source who provides or has provided the claimant with medical treatment or evaluation and who has or had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1527 (a)(2). Because nurse practitioners and counselors do not qualify as acceptable medical sources, an opinion from a nurse-practitioner or counselor cannot be given controlling weight under the treating physician rule. *See, e.g., Albizu v. Berryhill*, 335 F. Supp. 3d 355, 380 (E.D.N.Y. 2018) (recognizing that while the ALJ should consider the opinion of a nurse practitioner in the analysis as an "other source" opinion, the ALJ was not required to give said opinion controlling weight).

7

acceptable medical or nonmedical source, such as a source who has seen the individual more often and has provided better supporting evidence and explanation for the opinion. 20 C.F.R. § 404.1527(f)(1). Further, consideration of an opinion from someone who is not an "acceptable medical source," like a nurse practitioner or counselor, is particularly important where that provider is the "sole source that had a regular treatment relationship with plaintiff." *Thrasher v. Colvin*, No. 12-CV-0880 (MAT), 2015 WL 3463453, at *7 (W.D.N.Y. June 1, 2015) (citation omitted).

### A. Dr. Duffy and Dr. Straussner

The ALJ erred in giving such substantial weight to the opinions of Dr. Duffy and Dr. Straussner without explaining the inconsistencies between his own conclusions of severe impairments, in light of later-submitted evidence, and these consultative opinions. Without additional explanation, the ALJ erred by concluding these opinions were consistent with the evidence as a whole and outweighed other medical opinions in the record.

Oleske met with Kevin Duffy, Psy.D., for a one-time consultative psychiatric evaluation on August 7, 2014. Tr. 346. Dr. Duffy diagnosed Oleske with mild-to-moderate major depressive disorder and unspecified anxiety disorder. Tr. 349. According to Dr. Duffy, Oleske had mild-to-moderate difficulties with attention, concentration, relating adequately with others, and appropriately dealing with stress. *Id.* Dr. Duffy found the results of the examination were consistent with psychiatric problems but could not conclude they were significant enough to interfere with the claimant's ability to function on a daily basis at that time. *Id.*

8

On August 15, 2014, J. Straussner, Ph.D., reviewed Oleske's file, including Dr. Duffy's examination report. Tr. 94. Based on the review, Dr. Straussner concluded Oleske's psychiatric medically determinable impairment was not severe. *Id.*

In the RFC assessment, the ALJ gave "significant weight" to the opinions of psychologists Dr. Duffy and Dr. Straussner due to their expertise and their relative consistency of their opinions with each other and the overall medical evidence. Tr. 34. The ALJ considered that both doctors opined that Oleske's psychological limitations were, at most, mild-to-moderate. *Id.* However, the ALJ did note that subsequent evidence, including mental health treatment notes and Oleske's testimony at the hearing, shows that his mental impairments reached the threshold of severe impairments, but that the totality of the evidence led to a conclusion of not disabled. *Id.*

Oleske argues that Dr. Duffy's one-time examination and lack of detail regarding Oleske's limitations does not justify the "significant" weight the ALJ gave to his opinion. Dkt. 9-1, at 21. As to Dr. Straussner, Oleske argues this opinion is not entitled to great weight because Dr. Straussner was a non-examining, non-treating source who merely reviewed and signed off on Dr. Duffy's consultative examination. *Id.* at 21-22. Furthermore, Oleske notes that neither review included records from Mid-Erie Counseling Services, which were entered into the record later. *Id.* at 21. Oleske also argues that these opinions contradicted the ALJ's determination at step two that Oleske had severe mental impairments (depressive

9

disorder and anxiety disorder).  Dkt. 17, at 3.  Thus, according to Oleske, these opinions were not consistent with the evidence overall.  *Id.*

State agency medical and psychological consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p.  It is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision.  *See Colbert v. Comm'r of Social Security*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (collecting cases).  A consultative examiner's opinion may be accorded greater weight than even a treating source's opinion where the ALJ finds it more consistent with the medical evidence.  *See id.* (collecting cases).  Oleske acknowledges that both Dr. Duffy and Dr. Straussner are experts.  Dkt. 17, at 2.  As such, the ALJ was correct to consider favorably Dr. Duffy and Dr. Straussner's expertise in this area when evaluating their opinions.  Tr. 34.

While expertise is a factor listed in 20 C.F.R. § 404.1527, examining the other factors leads this Court to question ALJ's cited reasons for according significant weight to these opinions.  First, the ALJ cited the relative consistency of their opinions with each other.  Tr. 34.  But as Oleske argues and the Commissioner admits, Dr. Straussner's evaluation of Oleske was limited to a review of his file: Dr. Straussner never treated or examined Oleske, and he relied significantly on Dr. Duffy's report from a week earlier to mark Oleske's restrictions and difficulties as "mild" on the Disability Determination Explanation.  Tr. 94; Dkt. 14-1, at 5 ("On August 15, 2014, J. Straussner, Ph.D., a psychologist, reviewed Plaintiff's file").

10

Further, neither of these consultative experts reviewed Oleske's mental health treatment notes from Mid-Erie, which were entered into the record at a later date. Tr. 399. Given these facts, the consistency of the opinions is not surprising.

Second, the treatment and examining relationship factors do not favor weighing these opinions heavily, as neither doctor treated Oleske and Dr. Duffy only examined Oleske on one occasion, two years before the ALJ's decision. 20 C.F.R. § 404.1527(c)(1)-(2). These factors alone do not overturn the ALJ's assessment of the opinions, nor do they make the opinions stale. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (rejecting the argument that a consultative physician's opinion was stale just because subsequent treatment records and the physician's opinions were submitted in the record, when the additional evidence did not raise doubts to its reliability). Reliance on a dated consultative opinion may be justified when it is consistent with the record as a whole. *See Lesanti v. Comm'r of Social Security*, 1:19-CV-00121 EAW, 2020 WL 500986, at *3-4 (W.D.N.Y. Jan. 30, 2020) (finding a time gap of two years for consultative opinion to which ALJ gave great weight was not stale simply based on its age and where subsequent treatment records did not show significant deterioration).

Nevertheless, this Court agrees with Oleske that the ALJ failed to explain adequately how his own findings of severe depressive disorder and anxiety disorder at step two, based on subsequent evidence and Oleske's testimony, conflicted with the opinions of Dr. Duffy and Dr. Straussner. Tr. 28-29, 34. Dr. Duffy's opinion

11

that Oleske had mild-to-moderate difficulties in some areas but generally could follow and understand simple instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions is not wholly consistent with Oleske's RFC. Tr. 30, 33-34, 348-349. The RFC provided a slightly more restrictive view of Oleske's limitations, including occasional complex tasks and not allowing independent decision-making duties. Tr. 30. This Court acknowledges that the ALJ is not required to match the RFC perfectly to one medical opinion, even one given significant weight. *See Matt v.* Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). However, the ALJ erred in giving such significant weight to these opinions—and as discussed further below, relying on those opinions to discount other opinions—without giving any explanation regarding the differences between his findings and the opinions of Dr. Duffy and Dr. Straussner in light of later-submitted evidence. Based on this acknowledged but unexplained discrepancy, the ALJ erred by concluding these opinions were consistent with the evidence as a whole.

**B. Farris, LMHC and Brooks-Devlin, NP**

A review of the record in this case reveals that Oleske saw Colleen M. Farris, LMHC and Terry Jo Brooks-Devlin, NP on more than thirty occasions for mental health treatment. NP Brooks-Devlin managed Oleske's psychotropic medication monthly for nearly two years, with frequent adjustments to his medications. Tr. 404. Oleske started seeing Ms. Farris for biweekly counseling in late-2015. Tr. 550.

In early November 2016, Farris and NP Brooks-Devlin completed a mental impairment questionnaire that listed the following functional limitations: no or mild restrictions of activities of daily living; marked difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence, or pace; and three repeated episodes of decompensation within 12-month period, each of at least two weeks duration. Tr. 666. The report also stated that Oleske's impairments or treatment would cause him to be absent from work more than four days per month and that he was not able to function in a work setting. Tr. 667. Oleske's global assessment of function ("GAF") scores ranged 58 through 62. Tr. 664. The report stated that Oleske's anxiety and mood symptoms "contribute to worsening" of his gastrointestinal issues and pain. Tr. 666.

The ALJ gave reduced weight to this mental impairment questionnaire because (1) Farris and Brooks-Devlin are non-acceptable medical sources, and (2) their opinions were inconsistent with the well-supported opinions of psychologists Dr. Duffy and Dr. Straussner. Tr. 34. The ALJ reasoned that the report contained no clinical findings, detailed explanations, or functional assessments of the claimant's work-related abilities. *Id.* The ALJ also noted that these broad opinions on Oleske's ability to work contradicted the GAF scores, which indicate mild-to-moderate psychological symptoms. Tr. 34-35.

Oleske argues that the ALJ failed to consider properly the factors listed in 20 C.F.R. § 404.1527(c), particularly the length and frequency of the treatment relationship with Brooks-Devlin and Farris. Dkt. 9-1, at 23. The Commissioner

acknowledges the ALJ did not discuss this factor explicitly, but argues that the ALJ's decision reflects his consideration of the factors and good reasons for each opinion assessment. Dkt. 14-1, at 19, 21. The ALJ states that he considered opinion evidence in accordance with all the applicable regulation requirements, including 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Tr. 30.

The ALJ is required to consider the factors listed in 20 C.F.R. § 1527(c) in assessing NP Brooks-Devlin and Farris's opinion. *See Smith*, 351 F. Supp. 3d at 279. Courts generally do not require a mechanical recitation of regulatory factors "as long as the record reflects a proper application of the substance of the rule." *Samantha S. v. Comm'r of Social Security*, 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019) (citing *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order). Besides the general recitation of the regulation and a few mentions of treatment notes, the ALJ did not discuss explicitly these two non-physician providers' lengthy and frequent treatment and examining relationships with Oleske. Tr. 34. Such a treatment relationship—consisting of monthly medication management and biweekly counseling—is not insignificant, and an opinion based on such a relationship is, in some cases, entitled to greater weight than a consultative opinion. *See Thrasher*, 2015 WL 3463453, at *7.

Here, Oleske had no treatment relationship with an acceptable medical source like a psychiatrist. In cases like this, where Oleske only has ongoing treatment relationships with "other sources" like a nurse practitioner and a social worker, courts may consider these sources' opinions "critically important" and, thus,

14

the ALJ's failure to accord greater weight to said opinions "significant." *See Emsak v. Colvin*, No. 13-CV-3030, 2015 WL 4924904, at *10-11 (E.D.N.Y. Aug. 18, 2015).

In *Emsak*, the reviewing court found error where the ALJ failed to discuss the listed factors for evaluating medical opinions and failed to give sufficient weight to the opinion of the plaintiff's nurse-practitioner, who was one of only two professionals with whom the plaintiff had an "ongoing treating relationship." *Id.* at *11. The context in that case was similar to this case: the treating nurse practitioner and social worker's opinions were improperly discounted (or not even discussed) while the ALJ gave too much weight to the opinions of two consultative physicians, one who examined the plaintiff once and another who reviewed the file. *Id.* at *10-11.

In this case, the ALJ did not mention any treatment notes by either Brooks-Devlin or Farris when assessing the Brooks-Devlin and Farris opinion. Tr. 34. The ALJ's failure to discuss Oleske's longstanding treatment and examining relationships with Brooks-Devlin and Farris is a similarly critical gap in the ALJ's reasoning and explanation required under 20 C.F.R. § 1527(c). *See Emsak*, 2015 WL 4924904, at *10-11; *see also Hernandez v. Astrue*, 814 F. Supp. 2d 168, 188 (E.D.N.Y. 2011) (finding that the ALJ's failure to provide "good reasons" for considering plaintiff's other source evidence was "particularly critical" where plaintiff's primary therapist and social worker was the sole treating source in the record).

As for the ALJ's stated reasons, the ALJ cannot disregard this opinion simply because it is from a "non-acceptable medical source." Dkt 9-1, at 22. Although this is not a case where the ALJ completely disregarded a non-acceptable medical source opinion based on the identity of its source or failed to give any explanation for rejecting such an opinion, s*ee Canales v. Comm'r of Social Security*, 698 F. Supp. 3d 335, 344 (W.D.N.Y. 2010) ("While the ALJ was free to conclude the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision."),[4] these non-acceptable sources are the only ones with any significant treatment relationship with Oleske, while the acceptable sources are consultative physicians. *See Emsak*, 2015 WL 4924904, at *11-12 (finding the ALJ gave undue weight to the opinions of consultative physicians, one of whom examined plaintiff once and the other of whom only reviewed the medical records).

The other stated reason for giving reduced weight to the Brooks-Devlin/Farris opinion is that it is inconsistent with the opinions of the consultative physicians and acceptable medical sources. Tr. 34. Yet the ALJ himself acknowledged inconsistencies between his own findings at step two and these opinions, based on subsequent evidence that consisted, in part, of the Brooks-Devlin

---

[4] The considerations of SSR 06-3p may be satisfied where the ALJ specifically states in his decision that he considered a non-physician opinion and found it contradicted by the opinions of the consultative physicians who were acceptable medical sources, as well as the course of treatment, the objective medical findings of record, and the claimant's daily activities. *Figueroa v. Astrue*, No. 04-CV-7805 (KMK) (LMS), 2009 WL 4496048, at *12 (S.D.N.Y. Dec. 3, 2009) (finding no error in ALJ giving "minimal weight" to chiropractor's opinion when the ALJ was explicit about considering the report and its contradictions with other evidence).

and Farris medical records and treatment notes. Tr. 34. The ALJ cannot discredit the Brooks-Devlin/Farris opinion with Dr. Duffy's and Dr. Straussner's consultative opinions without further discussion of how the latter opinion fits within the context of Brooks-Devlin's and Farris's lengthy treatment relationships with Oleske. Nor can he rely on these acceptable medical source opinions so heavily without explaining how they are still consistent with the evidence as a whole, when the ALJ's examination of all the evidence led him to different conclusions—namely, that Oleske had a depressive disorder and anxiety disorder that qualified as severe impairments.

This Court acknowledges the discretion the ALJ has in weighing opinion evidence. Indeed, this is a close case. But on the facts of this case, the Court concludes that ALJ's failure to explain the discrepancies with the consultative physicians' opinions and to consider fully the factors listed 20 C.F.R. § 1527(c) constituted legal error. Remand is appropriate for the ALJ to determine the weight to accord to these medical source opinions in light of this decision, and based on the relevant factors and the record as a whole. Although the ALJ may ultimately conclude that Brooks-Devlin and Farris's opinion is still entitled to "reduced weight," he must nonetheless provide good reasons and explanation supported by substantial evidence for such a determination. Because re-evaluation of the weight to be assigned to these opinions could affect the ALJ's RFC assessment and the rest of the sequential evaluation process, this Court does not

reach Oleske's contention that the RFC assessment was otherwise unsupported by substantial evidence.

## **CONCLUSION**

For the reasons stated above, Oleske's motion for judgment on the pleadings, Dkt. 9, is GRANTED, and the Commissioner's cross motion for judgment on the pleadings, Dkt. 14, is DENIED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    April 2, 2020
             Buffalo, New York

                                              s/ John L. Sinatra, Jr.
                                              JOHN L. SINATRA, JR.
                                              UNITED STATES DISTRICT JUDGE